Andrea Darrow Smith, Esq. (SBN: 265237)
andreadarrowsmith@gmail.com
Ryan S. Carrigan, Esq. (SBN: 279709)
rscarriganlaw@gmail.com
**Smith & Carrigan Law Group, P.C.**
7121 Magnolia Avenue, Suite E
Riverside, CA 92504
Tel: (951) 530-3297  Fax: (888) 821-0153
Attorneys for Beatrice Ramirez & Kathleen Bicondova

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| BEATRICE RAMIREZ; KATHLEEN BICONDOVA<br><br>               Plaintiffs,<br><br>v.<br><br>LEGAL RECOVERY LAW OFFICES, INC.<br><br>               Defendant. | Case No: 5:14-Cv-2089<br><br>**COMPLAINT FOR VIOLATIONS OF 15 U.S.C. § 1692, ET SEQ. & CAL. CIV. CODE § 1788, ET SEQ.; SLANDER OF TITLE; CIVIL CONTEMPT** |

### INTRODUCTION

1.   This is an action arising from violations of the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Act ("Rosenthal Act"), California tort claims for slander of title, and civil contempt for violation of the bankruptcy discharge injunction.

2.   BEATRICE RAMIREZ ("Plaintiff Ramirez") and KATHLEEN BICONDOVA ("Plaintiff Bicondova") (collectively "Plaintiffs"), through Plaintiffs' attorneys, bring this complaint to challenge the actions of LEGAL RECOVERY LAW OFFICES, INC. ("Defendant") with regard to attempts by Defendant to unlawfully and abusively collect a debt allegedly

1   owed by Plaintiff Bicondova, to include publishing false information to the detriment of
2   both Plaintiffs. This conduct caused Plaintiff damages.

3   3.   Plaintiffs make the foregoing allegations based on their information and belief, with the
4        exception of those allegations that pertain to Plaintiff, or to Plaintiffs' counsel, which
5        Plaintiffs base on personal knowledge.

6   4.   While many violations of the FDCPA and Rosenthal Act are described below with
7        specificity, this Complaint alleges violations of both statutes cited in their entirety.

8   5.   Any and all violations of the FDCPA by Defendant were knowing, willful, and intentional,
9        and Defendant did not maintain procedures reasonable adapted to avoid any such
10       violations.

11  6.   Any and all violations of the Rosenthal Act by Defendant were knowing, willful, and
12       intentional, and Defendant did not maintain procedures reasonable adapted to avoid any
13       such violations.

14  7.   Any and all violations of California tort law by Defendant were made willfully,
15       maliciously, and without privilege or justification.

16                                **JURISDICTION AND VENUE**

17  8.   This action arises out of Defendant's violations of the Fair Debt Collection Practices Act,
18       15 U.S.C. § 1692 et seq. ("FDCPA"), violations of the California Rosenthal Act, Cal. Civ.
19       Code. § 1788 et seq. ("Rosenthal Act"), violations of California tort law, and violation of
20       the bankruptcy discharge injunction in its illegal efforts to collect a consumer debt from
21       Plaintiff Bicondova.

22  9.   This Court has jurisdiction to hear this case under 28 U.S.C. § 1331, 15 U.S.C. § 1692k,
23       and 28 U.S.C. § 1367 for supplemental state claims.

24  10.  Venue is proper pursuant to 28 U.S.C. § 1391.

25  11.  At all times relevant hereto, Defendant conducted business within the State of California,
26       therefore personal jurisdiction is established.

27  ///

28  ///

**PARTIES**

12. Plaintiffs are natural persons who reside in the City of Colton, County of San Bernardino, State of California.

13. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

14. Plaintiffs are "debtors" as that term is defined by California Civil Code § 1788.2(h).

15. Plaintiff Bicondova allegedly owed a consumer debt to Arrow Financial Services, LLC ("the alleged debt").

16. Defendant is located in the City of San Diego, County of San Diego, State of California.

17. Defendant is a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

18. Defendant is also a debt collector as that term is defined by California Civil Code § 1788.2(c).

19. This Complaint arises from Defendant's attempts to collect a "consumer debt" from Plaintiffs and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

***The Underlying Judgment & Abstract***

20. On or about November 25, 2009 Arrow Financial Services, LLC, represented by Defendant as legal counsel, filed a limited civil collections case against Plaintiff Bicondova in San Bernardino Superior Court, case number CIVDS916924 (hereinafter "the alleged debt".)

21. The alleged debt was incurred for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

22. The alleged debt is money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

23. On or about January 27, 2010 Default was entered and Default Judgment rendered by the San Bernardino Superior Court in case number CIVDS916924.

24. On or about August 27, 2010 Defendant, on behalf of its client Arrow Financial Services, LLC, recorded the Abstract of Judgment in San Bernardino Superior Court case number CIVDS916924 as instrument number 2010-0350168 in the official records of San Bernardino County.

25. At the time Defendant recorded said abstract of judgment Plaintiff Bicondova did not own any real property.

### *Plaintiff Bicondova's Bankruptcy*

26. On or about July 20, 2011 Plaintiff Bicondova filed a voluntary petition for Chapter 7 Bankruptcy in Central District of California Bankruptcy Court, case number 6:11-bk-33471-DS.

27. Plaintiff Bicondova listed Arrow Financial Services, LLC in the schedule of creditors and included them in the initial bankruptcy mailing list, with notice sent care of Defendant.

28. Plaintiff Bicondova was discharged from bankruptcy on November 2, 2011, and as evidenced by a Certificate of Notice issued by the bankruptcy court, a notice of her dischage was mailed to Defendant by the bankruptcy court on November 4, 2011.

29. As a result of her bankruptcy filing and discharge, Plaintiff Bicondova reasonably concluded that her debts, to include the alleged debt at issue her, had been discharged.

### *The Real Property*

30. Plaintiff Ramirez and her now deceased husband, Gonzalo Ramirez, Jr., purchased the real property commonly known as 1179 Norman Road Colton, CA 92324-1710 ("the Real Property") as joint tenants on February 11, 1966.

31. From February 11, 1966 until February 26, 2014 Plaintiff Ramirez and her husband were the sole legal owners of the Real Property.

32. In early 2014 Mr. Ramirez, Jr.'s health took a dramatic decline and he and Plaintiff Ramirez therefore granted an ownership interest in the Real Property to their daughter, Plaintiff Bicondova, on February 26, 2014.[1]

---

[1] Plaintiff Bicondova was the sole caretaker of her father before his passing, and took leave from her position as a registered nurse to care for him before his passing.

33. In or about early July 2014, Plaintiffs contacted Arrowhead Capital Mortgage seeking a refinance of the Real Property so that Plaintiffs could replace and modernize the windows of their home and pay taxes owed.

34. Much to their surprise, Plaintiffs were shocked to discover their refinance would not be approved because Defendant's Abstract of Judgment has attached to the Real Property.

35. Plaintiffs had no knowledge of and did not discover the Abstract of Judgment recorded against the Real Property until July 2014 when they were denied the refinance.

36. On or about July 10, 2014 Mary Mattingly of Arrowhead Capital Mortgage emailed Alia D. Trillo, a legal clerk for Defendant, seeking release of the lien created by the Abstract of Judgment.

37. On or about July 11, 2014 Alia D. Trillo responded to Ms. Mattingly's email stating "PER CLIENT ACCOUNT CANNOT BE RE-OPENED WITH OUR FIRM REFER TO TRAKAMERICA @ 9855) 400-3889."

38. Ms. Mattingly attempted contacting this number and it would not connect to any live person or automated system, it simply kept ringing.

39. On or about July 18, 2014 Ms. Mattingly sent a follow up email to Alia D. Trillo explaining that the Abstract of Judgment appeared to have followed Plaintiff Bicondova when she deeded onto the Real Property and that Plaintiff Bicondova had previously been discharged from the judgment in bankruptcy.

40. On or about July 18, 2014 Alia D. Trillo responded to Ms. Mattingly stating "UNFORTUNATRLY IM UNABLE TO ASSIST YOU."

41. Unable to refinance the property, Plaintiffs sought current counsel for legal remedy to this unlawful behavior by Defendant.

42. On or about September 9, 2014 Plaintiffs' counsel sent a demand letter to Defendant for removal of the lien and payment of damages for Plaintiffs.

43. The following day, September 10, 2014 Defendant submitted a release of lien to the San Bernardino County Recorder's Office, after previously denying the ability to do anything about it.

44. As a result of Defendant's refusal to assist Plaintiff's with removal of the lien prior to attorney involvement, Plaintiff Ramirez had to make an early withdrawal from her IRA of approximately $4,500.00 to pay for taxes owed, because Plaintiff Ramirez was unable to receive approval for a refinance in time to pay her extended tax payment to the IRS due to Defendant's misconduct.

45. As a result of Defendant's unlawful collection activities and slander of title, Plaintiffs suffered actual damages in the form of monetary damage consisting of both attorneys' fees and costs incurred, as well as IRA withdrawal penalties.

46. Plaintiffs also suffered mental and emotional distress as a result of Defendant's placement of the lien, subsequent refusal to remove the lien from the Real Property, and false statements published to third parties.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF FDCPA

47. All other preceding paragraphs are incorporated herein by reference.

48. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 et seq.

49. Defendant's failure to record a release of the Abstract of Judgment against Plaintiff Bicondova upon notice of her bankruptcy discharge constituted an unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. 1692f.[2]

50. Bankruptcy petitioners, such as Plaintiff Bicondova, are without legal ability to seek court removal of an abstract of judgment through bankruptcy if they are not owners of legal

---

[2] "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f.

property at the time they file bankruptcy, because technically there is no lien to be removed.

51.  It is not the debtor's duty to seek release of abstract of judgment for a debt which Defendant has been legally admonished under both federal and state collection laws as well as federal bankruptcy laws to cease collection upon.

52.  Once Defendant was notified of Plaintiff Bicondova's bankruptcy discharge it had an affirmative duty to file a release of the abstract against her.

53.  Defendant cannot simply leave an Abstract of Judgment recorded against Plaintiff Bicondova which will spring into a lien against real property the instant Plaintiff Bicondova acquires property ownership because she has been discharged of the alleged debt and cannot be required to seek avoidance of future liens stemming from discharged debts. Such a requirement would be in stark opposition to the "fresh start" of bankruptcy.

54.  Therefore Defendant's maintenance of the Abstract of Judgment constituted a violation of 15 U.S.C. 1692f.

55.  Defendant's refusal to assist Ms. Mattingly with removal of the abstract and lien and its false claim that Defendant could not assist with the removal of the abstract and lien was a deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. 1692e(2)(A) and 15 U.S.C. 1692e(10).[3]

56.  As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendants.[4]

---

[3] "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain further information concerning a consumer." 15 U.S.C. 1692e(10).

[4] "(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of -- (1) any actual damage sustained by such person as a result of such failure; (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; (2)(B) [CLASS ACTION DAMAGES]; and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in

## COUNT II: VIOLATION OF THE ROSENTHAL ACT

57. All other preceding paragraphs are incorporated herein by reference.

58. Because Defendants' actions described herein violated certain portions of the federal Fair Debt Collection Practices Act, which are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, Defendants' conduct also violated Cal. Civ. Code § 1788.17.[5]

59. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing

---

bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors -- (1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional"

15 U.S.C. § 1692k(a)-(b)(1).

[5] "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal." Cal. Civ. Code § 1788.17.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6), such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include --

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts".

15 U.S.C. § 1692a(6)(A)-(B).

1   or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

2   and reasonable attorney's fees and costs pursuant to Cal. Civ.  Code § 1788.30(c) from

3   each and every defendant, jointly and severally.[6]

4

### COUNT III: SLANDER OF TITLE

5   60.   On or about February 26, 2014, Plaintiffs were the owners of real property located in San

6       Bernardino County, California, commonly known as1179 Norman Road Colton, CA

7       92324-1710 ("the Real Property").

8   61.   On or about February 26, 2014, Defendant willfully, maliciously, and without privilege or

9       justification published to the world a false statement concerning Plaintiffs' title to the

10      property described in Paragraph 56 by causing an Abstract of Judgment to be recorded

11      against the Real Property with the San Bernardino County Recorder's Office after Plaintiff

12      Bicondova had already been discharged from the debt in bankruptcy.

13   62.   Recordation of the Abstract of Judgment in Plaintiffs' title chain constituted a false

14      statement in as such that Plaintiff Bicondova discharged the alleged debt in 2011 through

15      bankruptcy and had no ownership interest in the Real Property at the time the Abstract was

16      recorded against her name. Defendant took no action to remove the Abstract despite being

17      noticed by the Banktuptcy court of Plaintiff Bicondova's bankruptcy discharge.

18   63.   Defendant was under an affirmative duty to release the Abstract against Plaintiff

19      Bicondova once it was notified of her bankruptcy discharge as Plaintiff Bicondova had no

20

---

[6] "(a)Any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.

(b)Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

(c)In the case of any action to enforce any liability under this title, the prevailing party shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor; reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." Cal. Civ. Code § 1788.30(a)-(c).

legal means to request court relief until she acquired an interest in the Real Property because she technically had no "lien" to avoid until such time as she owned property. And unfortunately, once Plaintiff Bicondova acquired interest in the Real Property her title was automatically and immediately slandered by the Abstract of Judgment that Defendant failed to remove.

64. Furthermore, once Plaintiffs' mortgage officer Ms. Mary Mattingly called direct attention to the improper Abstract of Judgment in Plaintiffs' chain of title, Defendant denied the ability to assist and refused to cooperate or release the lien.

65. The misstatements provided to Ms. Mattingly by Defendant further constituted publication of false information to third parties regarding Plaintiffs' title.

66. Publication of the false statement by described in Paragraph 56 impaired the vendibility of the Real Property, to Plaintiffs' damage in a sum that will exceed $20,000. Publication of the false statement described in Paragraph 56 resulted in Plaintiffs' denial of a home refinance loan which also forced Plaintiff Ramirez to take a withdrawal from her IRA of $4,500 to pay taxes owed, to Plaintiffs' damage.

67. The publication described in Paragraphs 58 and 60 was motivated by Defendant's fraud and malice in that Defendant had a responsibility to stop collection efforts in regards to the underlying alleged debt and Abstract of Judgment once Plaintiff Bicondova was discharged from bankruptcy. Even further, once Ms. Mattingly directly called out the issue of the improper Abstract of Judgment Defendant blatantly refused to act and actually claimed the inability to act. Defendants actions were motivated by malice

68. Plaintiffs are therefore entitled to punitive damages in a sum according to proof.

**COUNT IV: VIOLATION OF BANKRUPTCY DISCHARGE; CONTEMPT OF COURT ORDER**

69. Defendant had actual knowledge of the filing of Plaintiff Bicondova's Chapter 7 bankruptcy and did not file an objection to discharge.

70. Defendant further had actual notice of Plaintiff Bicondova's discharge from bankruptcy and was mailed notice of discharge from the bankruptcy court itself.

71.   The Bankruptcy Code provides that a discharge under Chapter 7 discharges the debtor from "all debts that arose before the date of the order for relief" except as provided in 11 U.S.C. § 523.[7]

72.   A bankruptcy discharge voids any judgment that is a determination of personal liability of the debtor and operates as an injunction against attempts to collect the discharged debt.[8]

73.   The bankruptcy discharge injunction embodies the "fresh start" provided by the Bankruptcy Code by allowing the debtor an opportunity to rebuild their creditworthiness and personal finances without suffering from demands of payment from creditors holding discharged debts.[9]

74.   The bankruptcy discharge injunction acts as a specific order of a bankruptcy court and violation of this injunction supports a finding of civil contempt.[10]

75.   The attachment and recordation of Defendant's Abstract of Judgment on Plaintiff Bicondova's after acquired Real Property violated the discharge injunction provided by 11 U.S.C. § 524(a).

76.   While in bankruptcy Plaintiff Bicondova owned no real property at the time she filed for bankruptcy and therefore had no court mechanism to avoid any future liens the Defendant's Abstract of Judgment could create upon any after acquired real property.[11]

77.   Plaintiff Bicondova likewise had no ability to re-open her bankruptcy and remove a lien after discharge of bankrtuptcy because she did not own any real property at the time she filed her petition and therefore no "lien" had ever been created prior to her bankruptcy filing and seeking to re-open and avoid a lien also had no merit.

---

[7] 11 U.S.C. §727(b).

[8] 11 U.S.C. §524(a)(1)&(2).

[9] *In Re Lafferty*, 229 B.R. 707, 712 (Bankr. N.D. Ohio 1998).

[10] *Swaringim v. Swaringim (In re Swaringim)*, 43 B.R. 1,3 (Bankr. E.D. Mo. 1984)

[11] *In Re Trecee Lee Anderson*, case no. 1:02-bk-72101M (Bankr. W.D. Arkansas 2002)

78. The only party with the ability to release the Abstract of Judgment prior to Plaintiff Bicondova acquiring real property was Defendant.

79. Defendant was the only party with the ability to prevent the violation of the discharge injunction as it was the only party with the ability to voluntarily release the Abstract of Judgment once Plaintiff Bicondova was discharged from bankruptcy.

80. Defendant's failure to release the abstract once noticed of Plaintiff Bicondova's discharge left it in a position of unavoidable violation of the discharge injunction the moment Plaintiff Bicondova acquired real property.

81. Further, Defendant's willful misstatement to Ms. Mattingly and refusal to lift the lien once the abstract had attached to the Real Property also evidences Defendant's continued violation of the discharge injunction.

82. Due to Defendant's inaction and failure to release the abstract, Plaintiffs suffered damages in the form of monetary damages a result of the denied refinance and consequential withdrawal from Plaintiff Ramirez's IRA account. Plaintiff's also suffered emotional distress due to Defendant's unwillingness to voluntarily remove the improper lien caused by the Abstract of Judgment until Plaintiff's sought legal intervention.

83. Pursuant to 11 U.S.C. § 362(k)(1), Plaintiff Bicondova is entitled to compensation, including but not limited to, actual damages for her emotional distress and monetary damage suffered as a result of the improper recordation of the Abstract of Judgment; costs and attorneys' fees; and punitive damages from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant, and Plaintiffs be awarded damages from Defendant, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3);

- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorneys' fees, pursuant to Cal. Civ. Code § 1788.30(c);
- An award of actual damages incurred due to Defendant's Slander of Title;
- An award of actual damages; costs and attorneys' fees pursuant to 11 U.S.C. § 362(k)(1); and
- An award of punitive damages according to proof.

62.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Smith & Carrigan Law Group, P.C.**

Date: October 10, 2014            By: _Andrea D Smith_

Andrea Darrow Smith, Esq.
Attorneys for Plaintiffs